SAR/USAO#2004R00322

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA      :    Crim. No. 04-580 (JLL)

　　v.                                    :    18 U.S.C. §§ 1001, 1513(e) and
　　                                           2; 26 U.S.C. § 7206(2)
CHARLES KUSHNER               :

**I N F O R M A T I O N**

　　Defendant Charles Kushner having waived in open court prosecution by indictment and any objections based upon the statute of limitations, the United States Attorney for the District of New Jersey charges:

<u>COUNTS 1 - 16</u>

(<u>Assisting the Preparation of Fraudulent Partnership Returns</u>)

<u>Defendant and Entities</u>

　　1.　Defendant Charles Kushner, a resident of Livingston, New Jersey, was the Chairman of Kushner Companies, a business entity and trade-name which controlled over one-hundred residential, office, hotel, and commercial real-estate partnerships, limited liability corporations and management companies, located primarily in the New Jersey/Tri-State Area (the "Kushner Real Estate Partnerships").

　　2.　Kushner Real Estate Partnerships and Kushner Companies Entities included:

　　　　i.　Oakwood Apartments LLC which owned Oakwood Village, a 1224-unit residential apartment development located in

[stamp: RECEIVED AUG 18 2004 AT 8:30 ___ M WILLIAM T. WALSH, CLERK]

Flanders, New Jersey.

       ii. Quail Ridge L.P. which owned the business entities 8 Quail Ridge Associates, 9 Quail Ridge Associates, and 10 Quail Ridge Associates, which collectively owned Quail Ridge Apartments, a 1032-unit residential apartment development located in Plainsboro, New Jersey.

       iii. P.H. Developers L.P. which owned Pheasant Hollow Associates which, in turn, owned Pheasant Hollow, a 440-unit residential apartment development located in Plainsboro, New Jersey.

       iv. Westminster Management L.P. which operated as a property management company and collected a management fee from each of the Kushner Real-Estate Partnerships.

    3. It was the object of the scheme that defendant Charles Kushner would assist in the preparation of false partnership tax returns in order to evade the paying taxes by the partners of the Kushner Real-Estate Partnerships to the IRS for the true net income of the Kushner Real-Estate Partnerships through the overstatement of deductible business expenses and other means, and thereby cause the understatement of income reported by the Kushner Real-Estate Partnerships' partners.

    4. It was part of the scheme that defendant Charles Kushner oversaw the creation of financial reports for the Kushner Real Estate Partnerships which, among other things, improperly

characterized charitable contributions as current business expenses.

5. It was a further part of the scheme that defendant Charles Kushner caused the preparation of the partnership tax returns for the Kushner Real-Estate Partnerships into which he caused the incorporation of these fraudulent and mischaracterized expenses.

6. It was a further part of the scheme that defendant Charles Kushner caused the partnership tax returns for the Kushner Real-Estate Partnerships to be filed with the IRS.

7. It was a further part of the scheme that to disguise the scheme and prevent detection by the IRS, defendant Charles Kushner caused the omission of charitable contributions on the form K-1s distributed at year end to the partners in the Kushner Real-Estate Partnerships.

8. It was a further part of the scheme that in or about July 2000, defendant Charles Kushner caused (a) the approval of a $3,384 payment from Quail Ridge Associates to pay an individual's private school tuition expense, knowing this expense was neither incurred by Quail Ridge Associates nor related to its operation and (b) the recording of this payment as a charitable contribution in Quail Ridge Associates' accounting records.

9. It was a further part of the scheme that in or about December 2000, defendant Charles Kushner caused (a) the approval

of a $7,000 payment from Quail Ridge Associates to pay an individual's private school tuition expense, knowing this expense was neither incurred by Quail Ridge Associates nor related to its operation and (b) the recording of this payment as a charitable contribution in Quail Ridge Associates' accounting records.

10. It was a further part of the scheme that in or about July 2000, defendant Charles Kushner caused (a) the approval of a $3,384 payment from Pheasant Hollow Associates to pay an individual's private school tuition expense, knowing this expense was neither incurred by Pheasant Hollow Associates nor related to its operation and (b) the recording of this payment as a charitable contribution in Pheasant Hollow Associates' accounting records.

### The Charge

11. On the dates listed below, in Morris and Essex Counties, in the District of New Jersey and elsewhere, defendant

CHARLES KUSHNER

did knowingly and willfully assist in the preparation of U.S. Partnership Tax Returns, Forms 1065, which were fraudulent and false as to material matters knowing that the returns were false and fraudulent as set forth below:

| COUNT | PARTNERSHIP NAME | TAX YEAR | FILING DATE | FALSE MATTERS |
|---|---|---|---|---|
| 1 | Oakwood Apartments LLC | 1998 | April 14, 1999 | $42,685 in fraudulent office expenses |

4

| 2 | Oakwood Apartments LLC | 1999 | April 16, 2000 | $91,264 in fraudulent office expenses |
|---|---|---|---|---|
| 3 | Oakwood Apartments LLC | 2000 | April 15, 2001 | $65,057 in fraudulent office expenses |
| 4 | Pheasant Hollow Associates | 1998 | April 14, 1999 | $1,050 in fraudulent office expenses |
| 5 | Pheasant Hollow Associates | 1999 | April 16, 2000 | $41,356 in fraudulent office expenses |
| 6 | Pheasant Hollow Associates | 2000 | April 18, 2001 | $142,030 in fraudulent office expenses |
| 7 | 8 Quail Ridge Associates | 1998 | April 17, 1999 | $20,521 in fraudulent office expenses |
| 8 | 9 Quail Ridge Associates | 1998 | April 17, 1999 | $23,941 in fraudulent office expenses |
| 9 | 10 Quail Ridge Associates | 1998 | April 17, 1999 | $10,688 in fraudulent office expenses |
| 10 | 8 Quail Ridge Associates | 1999 | April 13, 2000 | $44,280 in fraudulent office expenses |
| 11 | 9 Quail Ridge Associates | 1999 | April 16, 2000 | $51,658 in fraudulent office expenses |
| 12 | 10 Quail Ridge Associates | 1999 | April 13, 2000 | $23,062 in fraudulent office expenses |
| 13 | 8 Quail Ridge Associates | 2000 | April 15, 2001 | $129,909 in fraudulent office expenses |
| 14 | 9 Quail Ridge Associates | 2000 | April 15, 2001 | $151,554 in fraudulent office expenses |

| 15 | 10 Quail Ridge Associates | 2000 | April 15, 2001 | $67,660 in fraudulent office expenses |
| --- | --- | --- | --- | --- |
| 16 | Westminster Management LP | 2000 | April 16, 2001 | $112,250 in fraudulent office expenses |

In violation of Title 26, United States Code, Section 7206(2).

COUNT 17

(Retaliating Against Cooperating Witness 1)

1. Paragraph 1 of Counts 1 to 16 are hereby incorporated and realleged as if fully set forth herein.

2. In or about February 2003, investigating federal law enforcement authorities began a Grand Jury Investigation. The Grand Jury Investigation focused on, among other things, defendant CHARLES KUSHNER'S control of over one-hundred real estate partnerships which he and various associates had allegedly used to defeat federal tax laws and circumvent federal campaign contribution limitations.

3. Since in or about March 2003, defendant CHARLES KUSHNER was aware of the Grand Jury Investigation and that Cooperating Witness 1, a close relative of defendant CHARLES KUSHNER, was providing information to investigating law enforcement authorities in connection with the Grand Jury Investigation. Cooperating Witness 1 is married to Cooperating Witness 2.

4. In or about August 2003, defendant CHARLES KUSHNER hired a private investigator (the "Private Investigator") and his associate (the "Associate") to arrange for and videotape the seduction of Cooperating Witness 2 by an escort/call girl ("Woman 1") and to videotape their sexual liaison.

5. On or about December 5, 2003, the Private Investigator, the Associate and Woman 1 successfully completed the plan to

7

seduce and videotape Cooperating Witness 2.

6. On or about May 7, 2004, certain business associates of defendant CHARLES KUSHNER received letters from the U.S. Attorney's Office indicating that they were targets of the Grand Jury Investigation.

7. On or about May 9, 2004, defendant CHARLES KUSHNER instructed the Associate that he wanted a copy of the videotape depicting Cooperating Witness 2 having sexual intercourse with Woman 1 along with still photographs created from the videotape, to be mailed to Cooperating Witness 1. Defendant CHARLES KUSHNER also instructed the Associate that he wanted the videotape and still photographs to be mailed from Canada and that they should arrive at Cooperating Witness 1's home prior to a scheduled family party.

8. On or about May 9, 2004, the Associate communicated to the Private Investigator defendant CHARLES KUSHNER's instructions to mail to Cooperating Witness 1 the videotape and still photographs of Cooperating Witness 2 having sexual intercourse with Woman 1.

9. On or about May 10, 2004, the Private Investigator traveled to a location in upstate New York and placed in the mail a package, addressed to Cooperating Witness 1, containing the videotape and still photographs.

10. On or about May 13, 2004, the above-described package

mailed by the Private Investigator arrived at the residence of Cooperating Witness 1 in Essex County, New Jersey and was opened by Cooperating Witness 1.

11. From in or about August 2003 to on or about May 12, 2004, in Essex County, in the District of New Jersey and elsewhere, defendant

CHARLES KUSHNER

did knowingly and willfully, and with the intent to retaliate, take action harmful to a person, namely Cooperating Witness 1, for providing to a law enforcement officer truthful information relating to the commission and possible commission of Federal offenses.

In violation of Title 18, United States Code, Sections 1513(e) and 2.

COUNT 18

(False Statement in an FEC Matter)

1. Paragraph 1 of Counts 1 to 16 are hereby incorporated and realleged as if fully set forth herein.

2. Between in or about 1999 and in or about 2002, defendant Charles Kushner, without the knowledge or permission of certain partners of the Kushner Real-Estate Partnerships, caused federal political campaign contributions in excess of $385,000 to be made in the name of said partners.

3. Between in or about 2000 and in or about 2002, in Florham Park, in the District of New Jersey and elsewhere, defendant

CHARLES KUSHNER

in a matter within the jurisdiction of an agency of the Executive Branch of the Government of the United States, that is, the Federal Election Commission (the "FEC"), did knowingly and willfully make and cause to be made materially false, fictitious and fraudulent statements and representations in that defendant provided to the FEC letters and schedules which falsely allocated campaign contributions to certain individuals who had no

knowledge that contributions were being made in their name, nor had consented to the making of a contribution.

In violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

_____
CHRISTOPHER J. CHRISTIE
United States Attorney

CASE NUMBER: _____

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

CHARLES KUSHNER

## INFORMATION FOR

18 U.S.C. §§ 1001, 1513(e) and 2
26 U.S.C. § 7206(2)

Christopher J. Christie
U.S. ATTORNEY
NEWARK, NEW JERSEY

RALPH J. MARRA, JR.
SCOTT A. RESNIK
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
(973) 645-2737